# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMER TYRONE LEWIS, | CASE NO. 1:10-CV-00266-OWW-DLB PC |
| Plaintiff, | ORDER REQUIRING PLAINTIFF EITHER TO FILE SECOND AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON COGNIZABLE CLAIMS |
| v. | |
| DERRAL G. ADAMS, et al., | |
| Defendants. | (DOC. 9) |
| _____/ | RESPONSE DUE WITHIN THIRTY DAYS |

### Screening Order

**I.     Background**

Plaintiff Homer Tyrone Lewis ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff initiated this action by filing his complaint on February 17, 2010.  (Doc. 1.)  On August 11, 2010, Plaintiff filed his first amended complaint.  (Doc. 9.)

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or

1

appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.*

**II.     Summary of Amended Complaint**

Plaintiff was previously incarcerated at California State Prison-Corcoran ("CSP-COR") where the events giving rise to this action occurred. Plaintiff names as Defendants warden Derral G. Adams, chief deputy warden Maurice Junious, associate warden Raul Lopez, associate warden R. Davis, correctional counselor II D. De Azevedo, correctional counselor I P. Johnson, correctional sergeant A. Morrison, correctional sergeant J. Corbin, and correctional officer G. Tamayo.

Plaintiff alleges the following. On October 2, 2008, Plaintiff sent a letter of complaint as confidential mail to Defendants Adams, Junious, Lopez, Davis, Morrison, and Tamayo due to serious threats of violence against Plaintiff by Protective Housing Unit ("PHU") inmates. Plaintiff informed Defendants that PHU inmates James Prado and Mike Markhasev had threatened Plaintiff with violence. Plaintiff was never notified by any Defendants that they had received the letter until three weeks later.

On October 23, 2008, Defendants A. Morrison and G. Tamayo failed to supervise the PHU inmates as a result of Defendants failure to intercede, Plaintiff was assaulted by inmates Prado and Markhasev. Plaintiff sustained cuts to his mouth and face, bruises and swelling on his face and body, and was kicked in the groin. Following examination by medical personnel, Defendant Morrison summoned Plaintiff to the sergeant's office and informed Plaintiff that Defendant Morrison needed to interview Plaintiff regarding his letter. Defendant Morrison

informed Plaintiff that Defendants Adams, Junious, Lopez, and Davis as well as Defendant Morrison were aware of Plaintiff's letter of complaint and were aware of the threats of violence against Plaintiff by inmates Prado and Markhesev. Defendant Morrison told Plaintiff that he had handled himself without help from custody staff, and to stop whining to Defendant Morrison's superiors regarding the lack of supervision by Defendants Morrison and Tamayo, because stuff happens at Corcoran State Prison.

Plaintiff was then placed in administrative segregation ("ad seg"), which Plaintiff refers to as maximum security, where Plaintiff is surrounded by known enemies who threaten to kill Plaintiff because of his PHU status. Plaintiff contends the removal of Plaintiff from PHU to ad seg was done in violation of due process per prison procedure.

Plaintiff was transferred from PHU to ad seg and remained in ad seg from October 23, 2008 until December 19, 2008 before receiving an Institutional Classification Committee hearing before Defendants Junious, Lopez, Davis, De Azevedo, and P. Johnson. Plaintiff contends that he was not provided with due process procedural safeguards.

Defendant Morrison denied Plaintiff's request to seek legal assistance from another inmate, Ernesto Fierro. On January 16, 2009, Defendant J. Corbin approached Plaintiff's cell door in ad seg and stated that he would put a plan in motion to have Plaintiff and inmate Fierro killed due to Office of Internal Affairs ("OIA") and Investigative Services Unit ("ISU") investigations against Defendant Corbin and other staff members. On January 19, 2009, Plaintiff notified Defendant Adams of Defendant Corbin's death threat. Defendant Corbin was later removed from ad seg and assigned a different post.

Defendants Adams, Junious, Lopez, Davis, De Azevedo, and Johnson conspired to document false and ambiguous confidential information in Plaintiff's central file to relocate Plaintiff from PHU to another institution. Plaintiff contends that Defendants De Azevedo, Adams, Junious, Lopez, Davis, and Corbin conspired against Plaintiff and retaliated against him for exercising his First Amendment rights by reclassifying and transferring Plaintiff to another institution.

Defendant De Azevedo stated to Plaintiff on February 18, 2009 that due to Plaintiff's

3

staff complaints, civil litigation, and OIA and ISU investigations against staff, Defendant Adams, Junious, Lopez, and Davis planned with another PHU inmate to have Plaintiff transferred out of the PHU.

Defendants Adams, Junious, Lopez, Davis, De Azevedo, and inmate Calihan conspired to have Plaintiff be found a threat to safety and security at PHU and to create a fabricated enemy situation with inmate Calihan. Defendant De Azevedo documented this in Plaintiff's central file on January 26, 2009.

On March 5, 2009, Defendant Lopez held another ICC hearing and informed Plaintiff that he is being transferred from PHU because of the OIA and ISU investigations and filing of civil litigation and inmate grievances against staff. Plaintiff stated that he feared for his life, but Defendant Lopez disregarded it.

On April 28, 2009, Plaintiff was transferred to California Substance Abuse Treatment Facility ("CSATF") and placed within the general inmate population. Defendants Adams, Junious, Lopez, Davis, De Azevedo, and Johnson know firsthand that CSATF is a violent institution and that Defendants exercised deliberate indifference in transferring Plaintiff from PHU to the general population. Plaintiff contends that the Mexican Mafia and LA California street gangs have an open contract on Plaintiff's life.

Plaintiff alleges retaliation, deliberate indifference, supervisory liability, due process violations, and state law claims of threats of violence and intentional infliction of emotional distress. Plaintiff seeks declaratory relief, injunctive relief in the form of prohibiting retaliation and protecting Plaintiff from harm, and compensatory and punitive damages.

**III.   Analysis**

    **A.   Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some

4

adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes*, 408 F.3d at 567-68).

Plaintiff alleges that Defendants Adams, Junious, Lopez, and Davis planned to transfer Plaintiff because of staff complaints, civil litigation, and OIA and ISU investigations. This is sufficient to allege a cognizable retaliation claim against Defendant Adams, Junious, Lopez, and Davis. *Pratt*, 65 F.3d at 806.

Plaintiff also contends that Defendant Morrison violated Plaintiff's First Amendment right to seek legal assistance from a particular jailhouse lawyer. Plaintiff is effectively contending deprivation of his freedom of association. Due to Plaintiff's incarceration, his right to freedom of association is necessarily curtailed. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) ("An inmate does not retain rights inconsistent with incarceration . . . . And, as our cases have established, freedom of association is among the rights least compatible with incarceration.") (citations omitted); *see also Shaw v. Murphy*, 532 U.S. 223, 231-32 (2001) (holding that prisoner's legal assistance to other inmates is deserving of no more First Amendment protection than any other prisoner speech).[1] Plaintiff has failed to allege sufficient facts to indicate that he had a constitutional right to receive legal assistance from a particular jailhouse lawyer, and thus fails to state a claim.

Plaintiff fails to allege a cognizable claim against Defendant Corbin for retaliation in violation of the First Amendment. Defendant Corbin allegedly made violent threats to Plaintiff. This is not a sufficiently adverse action to rise to the level of retaliation, as threats alone are

---

[1] Whether speech in the prison context is constitutionally protected is governed by the factors in *Turner v. Safley,* 482 U.S. 78, 89-90 (1987). First, "there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," and "the governmental objective must itself be a legitimate and neutral one." *Id.* A second consideration is "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90 (internal quotations and citation omitted). A third consideration is "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.*

insufficient to state a constitutional deprivation. *See Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (per curiam).

### B.  Deliberate Indifference

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982). In order to state a claim for violation of the Eighth Amendment, Plaintiff must allege facts sufficient to support a claim that officials knew of and disregarded a substantial risk of serious harm to him. *E.g.*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Mere negligence on the part of the official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost*, 152 F.3d at 1128.

Plaintiff alleges that Defendants Adams, Junious, Lopez, Davis, Morrison, and Tamayo were aware of threats to Plaintiff's health and safety and did nothing to intervene, which led to Plaintiff being attacked by two other inmates in PHU. Under federal pleading standards, this is sufficient to state a claim for deliberate indifference in violation of the Eighth Amendment.

Plaintiff alleges that Defendants Adams, Junious, Lopez, Davis, De Azevedo, and Johnson knew that CSATF is very violent and that there is a contract on Plaintiff's life, yet Defendants still transferred Plaintiff from PHU at CSP-COR to the general population at CSATF. Under federal pleading standards, this is sufficient to state a claim for deliberate indifference in violation of the Eighth Amendment.

### C.  Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of

action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. *Id.* Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. *See id.* With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Plaintiff alleges that administrative segregation is more dangerous than PHU, and that there is a severe impairment of liberty when transferred from PHU to administrative segregation. Under federal pleading standards, Plaintiff has sufficiently alleged a deprivation of a liberty interest for placement in administrative segregation.

Placement in administrative segregation, or the SHU if done for administrative rather than disciplinary purposes, requires notice to the prisoner, an opportunity for the prisoner to submit information, and non-adversarial review of the information supporting placement. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986). "Due process does not require the disclosure of the identity of any person providing information leading to the placement of a prisoner in administrative segregation." *Id.* at 1100-01.

Plaintiff has not sufficiently plead a cognizable due process claim against Defendants Junious, Lopez, Davis, De Azevedo, and P. Johnson for his placement in administrative segregation from October 23 to December 19 of 2008. Plaintiff makes a conclusory allegation that he was deprived of due process when he was placed in administrative segregation. Plaintiff does not state what that deprivation was. If Defendants notified Plaintiff of the reasons for placement, provided Plaintiff with an opportunity to submit information, and conducted a non-adversarial review of the placement, then due process has been satisfied.

Plaintiff also alleges that he was denied a fair and unprejudiced decision by Defendants

Junious and De Azevedo in their review of Plaintiff's inmate grievance. Plaintiff has not explained why Defendants Junious and De Azevedo were biased in their review of Plaintiff's grievance. Plaintiff is also not entitled to a specific inmate grievance procedure under due process. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2006) (citing *Mann v. Adams*, 855 F.3d 639, 640 (9th Cir. 1988)). Plaintiff thus fails to state a due process claim.

### D. Supervisory Liability

The Supreme Court recently emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. *Iqbal*, 129 S. Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id.* at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct.

When the named defendant holds a supervisory position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff contends that Defendant Adams failed to supervise, train, or discipline his subordinates. This is a conclusory allegation, and not sufficient to state a claim for supervisory liability against Defendant Adams. Plaintiff's allegation that Defendant Adams was negligent in failing to discharge correctional staff who were unfit for employment is effectively a claim of respondeat superior, which fails to state a claim for supervisory liability under § 1983.

### E. Conspiracy

Plaintiff alleges that defendants conspired to violate Plaintiff's rights under 42 U.S.C. §

8

1985(3). Section 1985 proscribes conspiracies to interfere with an individual's civil rights. To state a cause of action under § 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. *Gillispie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980); *see Giffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

In interpreting these standards, the Ninth Circuit has held that a claim under § 1985 must allege specific facts to support the allegation that defendants conspired together. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988). A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. *Id.*; *see Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1991).

Plaintiff fails to allege specific facts in support of a conspiracy. Conclusory allegations do not support a claim. *Iqbal*, 129 S. Ct. at 1949. Plaintiff further fails to allege discrimination on the basis of race or other class. Plaintiff thus fails to state a cognizable § 1985 conspiracy claim.

Section 241, Title 18 of the United States Code governs the federal crime of conspiracy. Plaintiff fails to state a claim. While § 241 provides a basis for criminal prosecution, it does not provide a private right of action and cannot form the basis for a civil suit. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam).

**F.     State Law Claims**

Plaintiff alleges a violation of California Civil Code section 51.7, which governs threats of violence, and intentional infliction of emotional distress. California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the

9

claim are conditions precedent to suit.  *State v. Superior Court of Kings County (Bodde)*, 32 Cal. 4th 1234, 1245 (2004); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).  To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act.  *State v. Superior Court*, 32 Cal. 4th at 1245; *Mangold*, 67 F.3d at 1477; *Karim-Panahi*, 839 F.2d at 627.

Here, Plaintiff fails to allege compliance with the Tort Claims Act, and thus fails to state any cognizable state law claims.

**IV.     Conclusion And Order**

Plaintiff has stated a cognizable claim against Defendants Adams, Junious, Lopez, Davis, Morrison, Tamayo, Johnson, and De Azevedo for deliberate indifference in violation of the Eighth Amendment.  Plaintiff also states a cognizable claim for retaliation against Defendants Adams, Junious, Lopez, and Davis for transferring Plaintiff to CSATF.  Plaintiff fails to state any other claims against any other Defendants.  Plaintiff will be provided the opportunity to file a second amended complaint curing the deficiencies identified.  *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff decides not to amend and is willing to proceed only on the claims found to be cognizable, Plaintiff shall notify the Court.  The Court will issue an order dismissing Defendant Corbin from this action, and forward service documents to Plaintiff for completion and return as to Defendants Adams, Junious, Lopez, Davis, Morrison, Tamayo, Johnson, and De Azevedo

If Plaintiff decides to amend, Plaintiff's amended complaint should be brief pursuant to Federal Rule of Civil Procedure 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights.  *Iqbal*, 129 S. Ct. at 1949.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567

1  (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded
2  pleading," L. R. 220.  Plaintiff is warned that "[a]ll causes of action alleged in an original
3  complaint which are not alleged in an amended complaint are waived." *King*, 814 F.2d at 567
4  (citing to *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981)); *accord Forsyth*,
5  114 F.3d at 1474.

      Accordingly, based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
   a. file a second amended complaint curing the deficiencies identified herein; or
   b. notify the Court of willingness to proceed only on claims found to be cognizable as stated herein;
3. Plaintiff may not add any new, unrelated claims to this action via the first amended complaint and any attempt to do so may result in an order striking the first amended complaint; and
4. If Plaintiff fails to comply with this order, the Court will recommend dismissal of this action for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **December 2, 2010**              /s/ **Dennis L. Beck**
                                                                 UNITED STATES MAGISTRATE JUDGE